**Case No. 22-10811**

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

ECB USA, INC., ATLANTIC VENTURES CORP., G.I.E. C2B,
and CONSTANTIN ASSOCIATES LLP,

Plaintiffs/Appellants,

v.

CHUBB INSURANCE COMPANY OF NEW JERSEY and
EXECUTIVE RISK INDEMNITY, INC.,

Defendants/Appellees.

---

Appeal from the United States District Court
for the Southern District of Florida
20-20569-CIV-SCOLA

---

**ANSWER BRIEF OF DEFENDANTS/APPELLEES
CHUBB INSURANCE COMPANY OF NEW JERSEY
AND EXECUTIVE RISK INDEMNITY, INC.**

---

Sylvia H. Walbolt
Carlton Fields, P.A.
215 South Monroe Street, Suite 500
Tallahassee, Florida 32302
(850) 224-1585
swalbolt@carltonfields.com

Steven J. Brodie
Aaron S. Weiss
David A. Karp
Carlton Fields, P.A.
700 NW 1st Avenue, Suite 1200
Miami, Florida 33136
(305) 530-0050
sbrodie@carltonfields.com
aweiss@carltonfields.com
dkarp@carltonfields.com

*Counsel for Defendants/Appellees Chubb Insurance Company of New Jersey
and Executive Risk Indemnity, Inc.*

*ECB USA, Inc., et al. v. Chubb Ins. Co. of N.J., et al.*
Case No. 22-10811

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-1 through 26.1-3, Appellees hereby provide their joint certificate of interested persons and corporate disclosure statement:

Argiz, Antonio  (Appellees' expert witness)

Atlantic Ventures Corp.  (Appellant)

Brodie, Steven J.  (Appellees' counsel)

Carlton Fields, P.A.  (Appellees' counsel)

Chubb Insurance Company of New Jersey (Appellee)

Constantin Associates LLP (Plaintiff and Counter-Defendant)

ECB USA, Inc. (Appellant)

Enriquez, Daniel G.  (Appellees' counsel)

Executive Risk Indemnity, Inc.  (Appellee)

Foell, Nathaniel G.  (Appellees' counsel)

ECB USA, Inc.  (Appellant)

G.I.E. 2CB (Appellant)

Hartman, Roy (Counsel for Constantin Associates LLP)

Kaplan, The Honorable Lewis A.

    (U.S. District Judge, Southern District of New York)

*ECB USA, Inc., et al. v. Chubb Ins. Co. of N.J., et al.*
Case No. 22-10811

Karp, David A.  (Appellees' appellate counsel)

Kirkpatrick, John E.  (Appellants' counsel)

Magolnick, Joel S.  (Appellants' counsel)

Marko & Magolnick, P.A.  (Appellants' counsel)

Reyes, Israel (Appellees' expert witness)

SARL Ets. Claude Blandin & Fils

> (Parent company of Appellant ECB USA, Inc.)

Scola, The Honorable Robert N.

> (U.S. District Judge, Southern District of Florida)

Shepherd, Michael

> (Appellees' trial counsel, no longer associated with Carlton Fields)

Silverman, Scott (Mediator at the trial court level)

Torres, The Honorable Edwin G.

> (U.S. Magistrate Judge, Southern District of Florida)

Walbolt, Sylvia H.  (Appellees' appellate counsel)

Weiss, Aaron S.  (Appellees' counsel)

* * *

Chubb Insurance Company of New Jersey is a wholly owned subsidiary of

Federal Insurance Company, which is a wholly owned subsidiary of Chubb INA

Holdings Inc.  Executive Risk Indemnity, Inc. is a wholly owned subsidiary of

*ECB USA, Inc., et al. v. Chubb Ins. Co. of N.J., et al.*
Case No. 22-10811

Chubb INA Holdings Inc.  Chubb INA Holdings Inc. is owned 80% by Chubb Group

Holdings Inc. and 20% by Chubb Limited.  Chubb Group Holdings Inc. is a wholly

owned subsidiary of Chubb Limited.  Chubb Limited is the ultimate parent and a

publicly traded company, listed on the NYSE under the ticker symbol CB. No

publicly traded company owns 10% or more of Chubb Limited's stock.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

In their Initial Brief, Appellants do not raise the only argument they preserved in their summary judgment briefing – that *Facebook, Inc. v. Duguid,* 141 S. Ct. 1163 (2021) ("*Facebook*"), purportedly precluded application of the series-qualifier canon for lack of a comma.  Instead, Appellants only raise arguments based on New Jersey law applying the last-antecedent canon, which the district court found, in denying reconsideration, Appellants waived by failing to raise those arguments and authorities in their summary judgment briefing.  Appellants do not mention, much less challenge, that waiver finding on appeal.

Given their waivers on appeal and below, Appellants' Initial Brief does not present issues that are preserved for this Court's review.  Nor have they demonstrated any reversible error in the district court's judgment.  Consequently, Appellees do not believe oral argument would benefit the Court.

# **TABLE OF CONTENTS**

*Page*

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ...............................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................... i

TABLE OF CONTENTS......................................................................... ii

TABLE OF AUTHORITIES ................................................................. iv

PRELIMINARY STATEMENT .............................................................1

STATEMENT OF JURISDICTION........................................................2

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............4

STATEMENT OF THE CASE AND FACTS ........................................5

    A.    The parties, the Policy, and the Underlying Lawsuit............5

    B.    The parties' summary judgment motions and the district
        court's orders on those motions ...........................................9

    C.    ECB's Rule 59 motion for reconsideration, Chubb's motion
        to amend, and the district court's orders on those motions.................13

STANDARD OF REVIEW ...................................................................18

SUMMARY OF ARGUMENT .............................................................19

I.    ECB's Initial Brief does not challenge two of the district court's
    rulings in rendering the judgment below, and ECB's waivers on
    appeal require affirmance..............................................................22

II.    ECB fails to demonstrate reversible error in the district court's
    judgment for Chubb.......................................................................26

# TABLE OF CONTENTS
### (continued)

*Page*

A.   The district court did not abuse its discretion in finding ECB waived its last-antecedent canon arguments under New Jersey law..................................................................26

B.   The district court did not abuse its discretion in declining to apply the last-antecedent canon of construction rather than the series-qualifier canon. ...............................................29

    1.   The district court properly declined to apply the last-antecedent canon, once raised..................................29

    2.   The district court correctly decided to apply the series-qualifier canon under *Facebook*................................33

III.   The judgment also should be affirmed because performing a certified financial audit is not "Management consulting" covered by the Policy. ...........................................................35

CONCLUSION....................................................................40

CERTIFICATE OF COMPLIANCE....................................................41

CERTIFICATE OF SERVICE ......................................................41

# <u>TABLE OF AUTHORITIES</u>

*Page*

## <u>Cases</u>

*Altrichter v. INAMED Corp.*,
  164 F. App'x 964 (11th Cir. 2006) ................................................... 24

*Beach Towing Services, Inc. v. Sunset Land Associates, LLC*,
  278 So. 3d 857, 861-62 (Fla. 3d DCA 2019) ................................. 31

*Cable Holdings of Battlefield, Inc. v. Cooke*,
  764 F.2d 1466 (11th Cir. 1985) ...................................................... 24

*Carrizosa v. Chiquita Brands International, Inc.*,
  47 F.4th 1278 (11th Cir. 2022) ................................................. 28, 34

*Cassidy v. Ohio Casualty Group*,
  2011 WL 3882477 (D.N.J. Sept. 2, 2011) ..................................... 30

*Chavarria v. Intergro, Inc.*,
  815 F. App'x 375 (11th Cir. 2020) ................................................. 27

*Chubb Custom Insurance Co. v. Prudential Insurance Co. of America*,
  948 A.2d 1285 (N.J. 2008) .............................................................. 30

*Continental Technology Services, Inc. v. Rockwell International
  Corp.*,
  927 F.2d 1198 (11th Cir. 1991) ...................................................... 27

*Corwin v. Walt Disney Co.*,
  475 F.3d 1239 (11th Cir. 2007) ...................................................... 18

*Facebook, Inc. v. Duguid*,
  141 S. Ct. 1163 (2021) ................................................. i, 4, 21, 34

*Fehribach v. Ernst & Young LLP*,
  493 F.3d 905 (7th Cir. 2007) .......................................................... 36

## TABLE OF AUTHORITIES
(continued)

*Page*

*Germain v. Town of Manchester*,
    41 A.3d 1100 (Conn. App. Ct. 2012) ............................................38

*Hamilton v. Southland Christian School, Inc.*,
    680 F.3d 1316 (11th Cir. 2012) ....................................................23

*Hobbs v. US Coastal Insurance Co.*,
    2018 WL 2332254 (D.N.J. May 23, 2018)....................................39

*Jacobs v. Tempur-Pedic International, Inc.*,
    626 F.3d 1327 (11th Cir. 2010) ....................................................19

*Little v. T-Mobile USA, Inc.*,
    691 F.3d 1302 (11th Cir. 2012) ....................................................25

*Mays v. United States Postal Service*,
    122 F.3d 43 (11th Cir. 1997) ........................................................27

*New Jersey Bank v. Palladino*,
    389 A.2d 454 (N.J. 1978) ........................................................28, 32

*Princeton Investment Partners, Ltd. v. RLI Insurance Co.*,
    2018 WL 846917 (D.N.J. Feb. 9, 2018)..................................36, 37

*Sapuppo v. Allstate Floridian Insurance Co.*,
    739 F.3d 678 (11th Cir. 2014) ..........................................22, 23, 25

*Solutia, Inc. v. McWane, Inc.*,
    672 F.3d 1230 (11th Cir. 2012) ..............................................18, 19

*State v. Gelman*,
    950 A.2d 879 (N.J. 2008) ..........................................14, 28, 30, 32

*Sun Life Assurance Co. of Canada v. Imperial Premium Finance, LLC*,
    904 F.3d 1197 (11th Cir. 2018) ....................................................27

v

## TABLE OF AUTHORITIES
(continued)

<u>Page</u>

*Turlington v. Atlanta Gas Light Co.*,
    135 F.3d 1428 (11th Cir. 1998) ...................................................................39

*United States v. Bass*,
    404 U.S. 336 (1971) ...........................................................................12, 33

*United States v. Jernigan*,
    341 F.3d 1273 (11th Cir. 2003) ...................................................................23

*United States v. Ladson*,
    774 F.2d 436 (11th Cir. 1985) ...................................................................28

*Wilchombe v. TeeVee Toons, Inc.*,
    555 F.3d 949 (11th Cir. 2009) ...................................................................27

*Zarrella v. Pacific Life Insurance Co.*,
    498 F. App'x 945 (11th Cir. 2012) ...............................................................19

**<u>Statutes</u>**

28 U.S.C. § 1291 ..............................................................................................3

**<u>Other Authorities</u>**

A. Scalia & Garner, *Reading Law: The Interpretation of Legal Text*s §
    19 (2012) ...............................................................................................31, 34

Bryan Garner, *Can A Town Be A Museum? A Case May Hinge on the
Precision of Definitions Lawyer Lexicographers Conjure for
the Court,* A.B.A.J. Vol. 104, No. 7 (July 2018) .........................................38

*In the Matter of PricewaterhouseCoopers LLP*, 2019 WL 4596714
    (S.E.C. Exchange Act Release Sept. 23, 2019) ...........................................38

## PRELIMINARY STATEMENT

Plaintiffs-Appellants ECB USA, Inc., Atlantic Ventures Corp., and G.I.E. C2B are referred to collectively as "ECB." Defendants-Appellees Chubb Insurance Company of New Jersey and Executive Risk Indemnity, Inc. are referred to collectively as "Chubb."

ECB's Initial Brief is cited "IB [page]." The record below is cited as "Doc. [number] at [number]," referring to the docket entry number in the district court and the CM/ECF page number. All internal citations and quotations are omitted, and all emphasis added, unless otherwise indicated.

## STATEMENT OF JURISDICTION

In an order entered November 9, 2022, the Court directed that the complaint be amended and the record supplemented to "establish that the parties' citizenships were diverse and the district court had subject matter jurisdiction over this action in the first instance."

In particular, this Court found the amended jurisdictional allegations reflected that the members of Plaintiff-Appellant Constantin Associates LLP are Jean-Francois Serval, who is a citizen of France, and Adriana Agbo, who is a citizen of New York.  The Court also supplemented the record to show that Plaintiff-Appellant G.I.E. C2B is a citizen of France.  *See* June 7, 2022 Joint Response to Jurisdictional Question at 7; Declaration of Arno Leoni ¶ 5.

This Court's order finding "probable jurisdiction" confirmed the jurisdictional facts asserted in the parties' June 7, 2022 joint response to the Court's questions regarding jurisdiction.  Specifically, Plaintiffs-Appellants ECB USA, Inc. and Atlantic Ventures Corp. are citizens of Florida.  (Doc. 1 ¶ 7.)  Plaintiff-Appellant G.I.E. C2B is a citizen of France, or if it is deemed more akin to a U.S. partnership than a U.S. corporation, a citizen of Florida and France.  *Id.* Defendants-Appellees Chubb Insurance Company of New Jersey and Executive Risk Indemnity, Inc. are citizens of New Jersey. (Doc. 1 ¶ 8, Doc. 93, PageID 21, ¶¶ 3, 4; Doc. 95, PageID 21, ¶ 4.)

2

The amount in controversy exceeds the jurisdictional threshold of $75,000 because the Plaintiffs-Appellants sought more than $4.85 million in damages in the Complaint. (Doc. 1 ¶ 13.)

With the now-filed amended complaint and supplemental record, this Court has jurisdiction to review the final judgment of the district court under 28 U.S.C. § 1291.

## **STATEMENT OF THE ISSUES PRESENTED FOR REVIEW**

1.     Whether the judgment should be affirmed because, in its Initial Brief, ECB does not challenge key rulings by the district court in rendering that judgment.

2.     Whether the district court abused its discretion in declining reconsideration based on its findings that ECB waived its arguments under New Jersey cases applying the last-antecedent canon because it chose not to raise those arguments or cite those authorities in its summary judgment briefing, and in any event, that the last-antecedent canon was not required to be applied here.

3.     Whether the district court reversibly erred in applying the series-qualifier canon based on *Facebook Inc. v. Duguid,* 141 S. Ct. 1163 (2021), which application results in the natural reading of the Policy definition of "Management consulting."

4.     Whether the judgment should be affirmed for the separate and independent reason that a certified financial audit is not "Management consulting" under the Policy definition.

## STATEMENT OF THE CASE AND FACTS

In its Statement of the Case and Facts, ECB omits material parts of the undisputed background facts and proceedings below.  In particular, ECB does not disclose the district court's order denying ECB's Rule 59 motion for reconsideration and finding that ECB waived the arguments raised there – the arguments ECB nevertheless now advances on appeal – by failing to raise them in its summary judgment briefing.  (Doc. 239).  Chubb provides the following statement to remedy those omissions.

### A.      The parties, the Policy, and the Underlying Lawsuit

This insurance coverage case arose over the parties' disagreement regarding the proper reading of an insurance policy provision providing coverage for "Management consulting" services.  "Management consulting" is defined as "services directed towards expertise" in six fields: "banking finance, accounting, risk and system analysis, design and implementation, asset recovery and strategy planning for financial institutions."  (Doc. 155 ¶12); (Doc.79-1 at CHUBB 005353).

In its motion for summary judgment, in addition to arguing that a certified financial audit was not "Management consulting," Chubb asserted that the series-qualifier canon of contract construction should be applied, such that the phrase "for financial institutions" modified each of the listed services.  Under that canon, where there is a straightforward, parallel construction for all nouns in a series, a modifier

at the end of a list is normally applied to the entire series.

ECB asserted, on the other hand, that the series-qualifier canon could not be applied because there was no comma before "for financial institutions" and accordingly that phrase only modified the last listed service of "assert recovery and strategy planning."  In its motion for reconsideration, filed after the court granted summary judgment, ECB argued, for the first time below, that New Jersey law required the last-antecedent canon to be applied, such that the phrase "for financial institutions" only modified the last listed service in the series – "asset recovery and strategy planning" – rather than the entire series of listed services.

The following facts are material to the parties' dispute:

From December 2001 to December 2017, Executive Risk Indemnity Inc. ("Executive Risk") issued professional liability insurance policies to Control Associates/Constantin Group LP, d/b/a Constantin Control Associates LP ("Control Group"), a Delaware limited partnership that provides professional and consulting services.  (Doc. 155 ¶¶ 14-16); (Doc. 155-3 to 155-16).  In December 2017, Control Group obtained a renewal Miscellaneous Professional and Technical Services ("MPTS") Liability Policy (the "Policy"), with a term ending December 12, 2018, from Chubb Insurance Company of New Jersey, a corporate affiliate of Executive Risk.  (Doc. 155 ¶¶ 1, 7); (Doc. 155-37 ¶ 6); (Doc. 79 ¶ 11).

The Policy's Insuring Clause states that Chubb "shall pay, on behalf of an

Insured, Loss on account of a Claim first made against the Insured during the Policy Period…for a Wrongful Act…set forth in Item 4 of the MPTS Declarations." (Doc. 155 ¶ 2); (Doc. 79-1 at CHUBB 005354). "Wrongful Act" means "any actual or alleged error, misstatement, misleading statement, act, omission, neglect, breach of duty or Personal Injury committed, attempted or allegedly committed or attempted solely in the performance of or failure to perform Professional Services." (Doc. 155 ¶ 9); (Doc. 79-1 at CHUBB 005357).

"'Professional Services' means: "(A) services which are performed by or on behalf of an **Insured** for others for a fee and set forth in Item 5 of the MPTS Declarations; and (B) Technology Services." (Doc. 155 ¶ 10); (Doc. 79-1 at CHUBB 005356). Item 5 insured Wrongful Acts in the performance of three types of Professional Services: (1) Computer consulting including computer system architecture and design; (2) Temporary Placement Agency Services; and (3) Management consulting. (Doc. 155 ¶ 11); (Doc. 79-1 at CHUBB 005353).

Of particular importance to this appeal, "Management consulting" is defined as "services directed toward expertise in banking finance, accounting, risk and system analysis, design and implementation, asset recovery and strategy planning for financial institutions." (Doc. 155 ¶ 12); (Doc. 79-1 at CHUBB 005353). ECB argues on appeal that, under the last-antecedent canon of construction, the phrase "for financial institutions" only modifies "asset recovery and strategy planning."

Chubb asserts that the district court correctly applied the series-qualifier canon, such that the phrase "for financial institutions" modifies all of the services listed under "Management consulting," requiring each of them to have been performed for a financial institution. Chubb further argues that a certified audit is not "Management consulting."

When Control Group first applied for insurance in 2001, its signed application represented that its business was "Management consulting for the financial community" and that 100% of its revenues came from its consulting business. (Doc. 155 ¶¶ 16, 17). In 2016, Control Group described its business as "accounting" and "managing and IT consulting," but again represented that 100 percent of its revenues came from consulting. (Doc. 155-31 ¶¶ 4, 9). The Policy definition of "Management consulting," including the phrase "for financial institutions," never changed from 2001 through the 2017-18 Policy. (Doc. 155 ¶ 15); (Doc. 155-17 ¶ 6).

In 2014, ECB purchased Schratter Foods Incorporated, a food company. (Doc. 155 ¶¶ 26-27); (Doc. 5-3 ¶¶ 15, 17). From 2010 to 2017, Schratter engaged Constantin, a corporate affiliate of Control Group, to perform certified financial audits and express "an opinion about whether [Schratter's] financial statements are fairly presented, in all material respects, in conformity with the U.S. generally accepted accounting principles." (Doc. 155 ¶¶ 28-29); (Doc. 5-3 ¶¶ 5, 20, 45).

On August 22, 2018, ECB sued Constantin with respect to its audits of

Schratter (the "Underlying Lawsuit").  (Doc. 155 ¶ 30); (Doc. 5-3 at 2).  Atlantic Ventures and G.I.E. C2B later became plaintiffs in that lawsuit.  (Doc. 155 ¶ 31); (Doc. 5-6).  The plaintiffs alleged that Constantin did not act as an independent auditor and consequently failed to detect misstatements and irregularities in Schratter's financial statements.  (Doc. 155 ¶¶ 33-34); (Doc. 5-3 ¶ 30); (Doc. 5-6 ¶ 32). The plaintiffs further alleged that they relied upon Constantin's certified audits in purchasing Schratter.  (Doc. 155 ¶ 32); (Doc. 5-6 ¶ 26).

Chubb received notice of the Underlying Lawsuit on September 19, 2018. (Doc. 155 ¶ 37); (Doc. 5-4).   On October 12, 2018, Chubb denied coverage, asserting, among other things, that the lawsuit did not allege a Wrongful Act in the performance of "Professional Services" as defined in the Policy, and thus did not trigger the Insuring Clause.  (Doc. 155 ¶ 38); (Doc. 5-5 at 4).  On July 2, 2019, Chubb reiterated its denial of coverage.  (Doc. 155 ¶ 39); (Doc. 5-9 at 4).

In November 2019, Constantin settled the Underlying Lawsuit and agreed to assign a stipulated judgment against Constantin in the Underlying Lawsuit to ECB. (Doc. 155 ¶ 40); (Doc. 5-10 at 3 ¶¶ 1-3).  ECB then filed this action.  (Doc. 155 ¶ 42); (Doc. 1-2 at 3).

### B.    The parties' summary judgment motions and the district court's orders on those motions

Ultimately, Chubb moved for summary judgment on ECB's claims for coverage of the Underlying Lawsuit.  Among other things, Chubb asserted that

audits were not "Management consulting" as defined under the Policy, and the certified audit for Schratter Foods was not provided to a financial institution as required to constitute an insured "Management consulting" service. *See* (Doc. 160 at 8-12). In turn, EBC moved for a partial summary judgment seeking a determination that the certified audit to a food company constituted "Management consulting" covered under the Policy, as well as seeking reformation of the Policy to make Constantin an Insured. (Doc. 154 at 7-10). The parties filed oppositions to the other's motion and a reply in support of its motion. (Doc. 186, 187, 193, 195).

With respect to the "for financial institutions" issue, Chubb relied on the Supreme Court's declaration in *Facebook* that "under conventional rules of grammar, 'when there is a straightforward, parallel construction that involves all nouns or verbs in a series,' a modifier at the end of the list 'normally applies to the entire series,'" which "generally reflects the most natural reading of a sentence." (Doc. 161 at 13) (quoting 141 S. Ct. at 1169). Chubb also cited a New Jersey case applying the series-qualifier canon. *Id.*

In response, ECB relied entirely on its assertion that under *Facebook,* a comma must be placed before a trailing modifier in order for the series-qualifier canon to be applied. (Doc. 186). In ECB's words, "there is no escaping the command of the Supreme Court on this rule of construction." (Doc. 186 at 6).

Although ECB cited New Jersey authorities in alternatively arguing that a

10

certified audit is "Management consulting," (Doc. 154 at 7-10); (Doc. 186 at 3-7), ECB did not assert that New Jersey law required the last-antecedent canon to be applied to the "for financial institutions" phrase in the definition of "Management consulting." (Doc. 186). Indeed, it did not even mention that canon or cite any New Jersey case applying it. *Id.* It also did not address the New Jersey cases cited by Chubb in support of the series-qualifier canon. *Id.*

ECB's entire argument on this issue on summary judgment consisted of 14 lines. *Id.* at 10. It devoted only 11 lines to this issue in its reply in further support of its own motion, again relying solely on *Facebook.* (Doc. 193 at 5). In its response, Chubb further demonstrated that *Facebook* did not impose an arbitrary rule precluding application of the series-qualifier canon whenever a comma is absent before a trailing modifier. (Doc. 195 at 7-10).

The district court entered an Omnibus Order on the parties' summary judgment motions, finding for ECB on its claim for reformation of the Policy to make Constantin an Insured. (Doc. 226). The court also ruled, based on New Jersey authorities cited by ECB, that the certified audit involved "services directed toward expertise in…accounting" and thus was "Management consulting." (Doc. 226 at 4). On the other hand, ruling that the Supreme Court's decision in *Facebook* did not require a comma before a trailing modifier, the court applied the series-qualifier canon and concluded that because "the Underlying Lawsuit did not concern the

provision of accounting services to a financial institution," it was not covered under the Policy definition of "Management consulting." *Id.* at 8-9.

In addressing that issue, the district court described the parties' respective summary judgment positions as follows:

> The Defendants argue that covered accounting services must be provided to a financial institution, pointing to the series-qualifier canon, which holds that a modifier (here, "for financial institutions") at the end of a series of nouns or verb normally applies to the entire series. (ECF No. 161 at 13); *see Facebook, Inc. v. Duguid,* 141 S. Ct. 1163, 1169 (2021). The Plaintiffs argue that the series-qualifier canon only applies where there is a comma before the modifier – therefore, as there is no comma before "for financial institutions," the Plaintiffs argue that clause only qualifies the phrase immediately preceding it (namely, "asset recovery and strategy planning"). (ECF No. 186 at 6); *see Facebook,* 141 S. Ct. at 1170.

(Doc. 226 at 9).

Rejecting the only argument ECB made, the court ruled that *Facebook* does not require a comma before the trailing modifier "for financial institutions" in order to apply the series-qualifier canon. (Doc. 226 at 9). The court further noted that, in *United States v. Bass,* 404 U.S. 336, 340 n.6 (1971), the Supreme Court stated that while "commas at the end of series can avoid ambiguity," the "use of such commas is discretionary." *Id.*

The district court concluded that, consistent with *Facebook*, application of the series-qualifier canon provides the most natural reading of the Policy definition of "Management consulting." *Id.* Under that canon, "the phrase 'for financial

institutions' modifies the entire series," so that "[m]anagement consulting services is defined as the provision of 'services directed toward expertise in…accounting…for financial institutions'" in the definition of "Management consulting." *Id.* Accordingly, the court granted summary judgment for Chubb on ECB's remaining claims and entered judgment for Chubb. (Doc. 226).

### C.    ECB's Rule 59 motion for reconsideration, Chubb's motion to amend, and the district court's orders on those motions

Chubb moved to amend the Omnibus Order to add a "ministerial clarification," reflected in its proposed amended order, that the district court did not grant ECB monetary damages in reforming the Policy to make Constantin an Insured. (Doc. 227).

Thereafter, ECB filed a Rule 59(e) motion for reconsideration of the Omnibus Order, arguing for the first time that (1) as a matter of controlling New Jersey law, the last-antecedent canon must be applied because there is no comma before the phrase "for financial institutions," (2) the Supreme Court's decision in *Bass* establishes that the Policy language concerning "for financial institutions" is inherently ambiguous, which must be interpreted in favor of coverage under New Jersey law, and (3) reading the definition of "management consulting" under the series-qualifier canon is "awkward and redundant." (Doc. 228 at 1-3).

In response, Chubb asserted that ECB's failure to raise these arguments in its summary judgment briefing waived them. (Doc. 235 at 5-11). Chubb further

asserted that New Jersey courts do not mandate application of the last-antecedent canon in the absence of a comma and, in particular, do not apply that canon where a "contrary intention" appears. (Doc. 235 at 13-14) (citing *State v. Gelman*, 950 A.2d 879, 884 (N.J. 2008)). Chubb cited New Jersey cases allowing consideration of Constantin's application for insurance for "management consulting for the financial community" in determining whether to apply the last-antecedent canon to the "for financial institutions" language in the definition of "management consulting." *Id.*

In its reply, ECB did not dispute that this insurance application could be considered under New Jersey law to preclude application of the last-antecedent canon. (Doc. 238). As to Chubb's waiver argument, ECB pointed to its general position in its summary judgment briefing regarding the lack of a comma. (Doc. 238 at 6-9).

By a detailed order dated February 25, 2022 (the "Reconsideration Order"), which ECB does not disclose or address in the "Dispositions of the District Court" section of its Initial Brief or anywhere else in that brief, the district court denied ECB's Rule 59 motion for reconsideration on each ground ECB asserted. (Doc. 239).

The court first determined that "[a]s the Plaintiffs could have raised these arguments in the summary judgment briefing, but chose not to, the Plaintiffs have waived these arguments." (Doc. 239 at 3). Observing that Rule 59(e) motions

cannot be used to raise new arguments or authorities that could have been raised in the first place, the court explained that ECB was asserting that "the Court committed legal error by failing to apply a rule of construction that no party brought before it." *Id*. Because "the arguments and authorities" now advanced by ECB "were available to [ECB] during the briefing of the parties' motion for summary judgment," ECB's failure to raise these arguments and authorities at that time "results in a waiver of the argument." (Doc. 239 at 4).

Nonetheless, the district court alternatively addressed each of the grounds ECB offered for reconsideration and found none warranted reconsideration. (Doc. 239 at 4-6). In particular, it concluded that ECB's newly cited New Jersey authorities do not impose a bright-line mandate of application of the last-antecedent canon absent a comma. (Doc. 239 at 5).

Instead, New Jersey cases provide that "the last-antecedent doctrine only applies unless a contrary intention otherwise appears." *Id*. They further allow courts to "consider the extrinsic evidence of the application in determining the parties' intent and the insured's reasonable expectations." *Id*. Here, the application for insurance confirmed the parties' "contrary intention" with respect to the long-standing definition of "Management consulting" because it stated that coverage was desired for "management consulting for the financial community." *Id*.

In addition and separately, the court concluded that applying the last-

antecedent canon would result in an unreasonable construction of "Management consulting." *Id.* "[I]t would be absurd to believe that the Defendants extended coverage to Control Group for 'services directed toward expertise in banking finance, accounting, risk and systems analysis, [and] design and implementation' for entities in any field while limiting coverage for 'services directed toward expertise in . . . asset recovery and strategy planning' solely to those services provided to financial institutions.'" *Id.*

The court also rejected ECB's argument that applying the series-qualifier canon results in an "awkward and redundant" definition of "Management consulting" "with regard to banking finance services, as the clause would read that coverage is provided for services directed toward expertise in banking finance . . . for financial institutions." (Doc. 239 at 6). To the contrary, many business entities – not only financial institutions – may desire banking finance services. *Id.*

Similarly, the court concluded that *Bass* does not establish that the definition is inherently ambiguous for lack of a comma, thereby requiring application of the last-antecedent canon. *Id.* In fact, the *Bass* court did "not attach significance to an omitted comma" and found ambiguity for entirely different reasons. *Id.*

Based on its waiver finding and alternate legal rulings, the district court entered the Reconsideration Order denying ECB's Rule 59 motion. (Doc. 239 at 7). In that order, the court also granted Chubb's motion to amend the Omnibus Order to

clarify the relief granted on ECB's reformation claim, specifically stating in doing so that the Reconsideration Order "amends the Omnibus Order, which will be concurrently entered as a separate docket entry." *Id.* Immediately thereafter, the court entered the Amended Omnibus Order submitted by Chubb with its motion to amend. (Doc. 240).

ECB does not disclose the Reconsideration Order in the "Dispositions of the District Court" section of ECB's Initial Brief or elsewhere in its brief. Instead, immediately after stating that ECB moved for reconsideration of the Omnibus Order and Chubb moved to amend it, ECB states that the court entered the Amended Omnibus Order, which "clarified the judgment of reformation" previously granted for ECB. IB 13. In the next sentence, ECB states that the Amended Omnibus Order "is otherwise identical to the Omnibus Order previously entered by the district court." IB 13.

By this truncated description of the court's orders, ECB wrongly implies that no order expressly addressed the least-antecedent canon asserted in ECB's Rule 59 motion and that the Amended Omnibus Order is the only order of the district court after that motion was filed. In fact, the Amended Omnibus Order references the Reconsideration Order and expressly states that the Omnibus Order "has been amended to clarify" the relief granted in the Reconsideration Order on ECB's reformation claim. (Doc. 239 at 7).

The district court entered a separate judgment for Chubb after entry of the Amended Omnibus Order. (Doc. 241). ECB filed this appeal of the Omnibus Order, Reconsideration Order, Amended Omnibus Order, and judgment. (Doc. 242).

## STANDARD OF REVIEW

ECB tries to bypass the highly deferential abuse of discretion standard of review this Court applies to orders on Rule 59 motions for reconsideration by omitting that standard of review from its Initial Brief. IB 18-19. By that omission, ECB attempts to obtain the *de novo* standard of review for arguments that ECB only raised in its motion for reconsideration – arguments the district court expressly found in its Reconsideration Order to have been waived.

The *de novo* standard only applies, however, to the rulings that the district court actually made in granting summary judgment, not to rulings made in denying reconsideration. *See Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1252-54 (11th Cir. 2007) (applying *de novo* review to summary judgment order and abuse of discretion to reconsideration order). This Court "review[s] a district court's denial of a motion for reconsideration for abuse of discretion." *Id.* at 1254.

This Court has rejected attempts to obtain *de novo* review of rulings only made upon a motion for reconsideration. *See Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1238 n.12 (11th Cir. 2012) (finding argument that *de novo* standard should apply to orders reconsidering summary judgment was "unsupported by Eleventh Circuit

precedent" and holding that "the standard of review remains abuse of discretion").

The Eleventh Circuit "review[s] a Rule 59(e) motion seeking reconsideration of the

grant of summary judgment *only* for abuse of discretion, not *de novo*." *Zarrella v.*

*Pac. Life Ins. Co.*, 498 F. App'x 945, 949-50 (11th Cir. 2012) (citing *Solutia Inc.*,

672 F.3d at 1238).

The abuse of discretion standard presents a particularly steep hill to climb

because the district court's initial standard to review a Rule 59(e) motion is itself

difficult to surmount. "[T]he only grounds for granting [a Rule 59] motion are newly

discovered evidence or manifest errors of law or fact." *Jacobs v. Tempur-Pedic Int'l,*

*Inc.*, 626 F.3d 1327, 1344 (11th Cir. 2010) (citation omitted).

## <u>SUMMARY OF ARGUMENT</u>

This appeal comes to this Court in an unusual posture because of ECB's

preservation failures, which require Chubb to depart from strictly tracking the order

of the Initial Brief. Chubb addresses ECB's lack of preservation first.

Specifically, in its Initial Brief, ECB does not challenge two key

determinations by the district court in entering judgment for Chubb. First, ECB does

not challenge the district court's finding that ECB waived its New Jersey law

arguments based on the last-antecedent canon, which ECB only raised in its Rule 59

motion for reconsideration. Rather, ECB advances those waived arguments on

appeal as if they were preserved below. Given its remarkable omission of any

acknowledgment or discussion of the district court's waiver finding, however, ECB's last-antecedent canon arguments are not preserved on appeal for this Court's review.

Second, ECB does not challenge the district court's specific ruling on the only argument ECB preserved in its summary judgment briefing – that the Supreme Court's *Facebook* decision purportedly precluded application of the series-qualifier canon in the absence of a comma before the phrase "for financial institutions" in the Policy definition of "Management consulting."  ECB does not advance that argument or even mention *Facebook*.  Hence, ECB has abandoned any challenge on appeal of that ruling by the district court.

Given ECB's failure in its Initial Brief to demonstrate any error in these discrete grounds for the district court's summary judgment, it should be summarily affirmed.  Even apart from those waivers, the judgment should be affirmed.

First, the district court did not abuse its discretion in finding that ECB waived its last-antecedent canon arguments because it chose not to advance those arguments based on New Jersey authorities in its summary judgment papers.  Instead, ECB's Rule 59 motion was the first time ECB asserted that this canon must be applied under New Jersey law, although the authorities now cited as controlling law were fully available to ECB on summary judgment.

Second, the district court did not abuse its discretion in denying

reconsideration based on ECB's last-antecedent canon arguments. In particular, New Jersey case law establishes that this canon does not apply where a "contrary intention" exists. That "contrary intention" exists here, and ECB has not shown otherwise in its Initial Brief. Nor does the last-antecedent canon constitute a mandatory rule of construction under New Jersey law, without regard for the natural reading of the policy language.

Nor did the district court err in applying the series-qualifier canon despite the lack of a comma before the phrase "for financial institutions." As the Supreme Court said in *Facebook,* "under conventional rules of grammar, 'when there is a straightforward, parallel construction that involves all nouns or verbs in a series,' a modifier at the end of the list 'normally applies to the entire series.'" 141 S. Ct. at 1169. That straightforward construction results in the most natural reading of the Policy and directly supports the district court's judgment.

In the alternative, the judgment for Chubb should be affirmed because a certified financial audit is not a consulting service for management. In fact, such an auditor must be independent of management, as third parties rely on this type of audit, just as occurred in this case. As such, this audit was not "Management consulting," and, for this independent reason, the Policy did not provide coverage for the Underlying Lawsuit.

21

## ARGUMENT

**I.    ECB's Initial Brief does not challenge two of the district court's rulings in rendering the judgment below, and ECB's waivers on appeal require affirmance.**

In granting judgment, the district court made two key determinations that ECB fails to challenge on appeal.  This is fatal to ECB's appeal.

First, in its Reconsideration Order, the district court expressly found ECB waived its arguments in its Rule 59 motion for reconsideration that New Jersey law required application of the last-antecedent canon.  ECB nonetheless advances those exact arguments on appeal without acknowledging the district court's waiver finding, identifying it as an issue on appeal, or addressing it in its arguments in the Initial Brief.  ECB thereby abandoned any challenge to the district court's waiver finding that supports its judgment for Chubb.

To "obtain reversal of a [trial] court judgment that is based on multiple, independent grounds, an appellant must convince [the reviewing court] that every stated ground for the judgment against him is incorrect."  *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).  "When an appellant fails to challenge properly on appeal one of the grounds on which the [trial] court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed."  *Id.*

In *Sapuppo*, the Court discussed the ways the appellant had abandoned any

22

challenge to the district court's alternative rulings, including that its statement of the issues did not mention any issues involving the ruling. *Id.* at 680. Thus, the appellant "abandoned any argument that the additional reasons the district court stated for dismissing each of the claims was error." *Id*. (collecting cases). Furthermore, "an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority." *Id*. at 681. *See also Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012) (finding waiver where "brief mentions the ministerial exception only once, and that is when describing the district court's rulings").

Instead, a "party seeking to raise a claim or issue on appeal must plainly and prominently so indicate, i.e., in a section of his brief that is demarcated by a boldface heading or by some equivalent notation. At the very least, he must devote a discrete, substantial portion of his argumentation to that issue. Otherwise, the issue  even if properly preserved at trial – will be considered abandoned." *United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003).

Under these authorities, ECB has abandoned any challenge to the district court's waiver finding. In its Initial Brief, ECB does not mention the court's waiver finding in its  (1) statement of "Dispositions of the District Court," (2) statement of the single ruling it appeals, (3) statement of the issues on appeal, (4) statement of the standard of review, (5) summary of argument, or (6) argument headings.  Nor does

ECB make any substantive argument challenging that finding. Indeed, the argument asserted by ECB below in its reply to Chubb's assertion of waiver is entirely absent from ECB's Initial Brief.

Ignoring the court's waiver finding altogether, ECB boldly asserts that the district court "disregarded" the last-antecedent canon in granting summary judgment for Chubb. IB 20. In fact, the district court did not address this canon in its Omnibus Order because ECB did not assert it until its Rule 59 motion for reconsideration. Once ECB asserted that the last-antecedent canon controlled, the court addressed this contention in detail in its Reconsideration Order.

The district court did not need to address ECB's last-antecedent canon arguments again in the Amended Omnibus Order, which was entered expressly to implement the court's Reconsideration Order. (Doc. 239 at 7). These interrelated orders, entered just minutes apart, must be read together. *See, e.g., Cable Holdings of Battlefield, Inc. v. Cooke*, 764 F.2d 1466, 1472 (11th Cir. 1985) (reviewing injunction and summary judgment orders together since "we cannot properly exercise our jurisdiction under § 1292(a)(1) without also reviewing the grant of partial summary judgment"); *Altrichter v. INAMED Corp.*, 164 F. App'x 964, 964 (11th Cir. 2006) (affirming district court's order when read together with later order limiting initial order's scope).

On appeal, ECB seeks *de novo* review by pretending the Reconsideration

Order does not exist and that the Amended Omnibus Order is the only order entered after ECB's Rule 59 motion. But the Reconsideration Order does exist, and it fully addresses the last-antecedent canon arguments ECB claims the district court disregarded. In choosing not to address the district court's waiver finding with respect to those arguments, ECB has abandoned any challenge to that key finding.

This leaves ECB with the only argument it advanced in its summary judgment briefing – its 14 lines' worth of argument that *Facebook* holds a trailing modifier always must be set off by a comma for the series-qualifier canon to be applied. In support of that contention, ECB cited one isolated part of *Facebook's* discussion of the series-qualifier canon and unequivocally declared "there is no escaping the command of the Supreme Court on this rule of construction." (Doc. 186 at 6).

On appeal, however, ECB does not assert that the district court erroneously failed to follow the supposed command of the United States Supreme Court in *Facebook* regarding the series-qualifier canon. ECB does not even mention *Facebook* in its Initial Brief. ECB instead asserts a purported command of the *New Jersey courts* that, in the absence of a comma, the last-antecedent canon must apply. Consequently, ECB has waived on appeal the sole argument it preserved in its summary judgment briefing.

Given ECB's waivers in its Initial Brief, the judgment should be affirmed. *See Sapuppo*, 739 F.3d at 680; *see also Little v. T-Mobile USA, Inc.*, 691 F.3d 1302,

1306 (11th Cir. 2012) (affirming because "plaintiffs . . . failed to challenge in their opening brief to this Court the district court's fourth ground for [its order]").

## II. ECB fails to demonstrate reversible error in the district court's judgment for Chubb.

Even apart from ECB's waivers on appeal, the judgment should be affirmed for several independent reasons.

### A. The district court did not abuse its discretion in finding ECB waived its last-antecedent canon arguments under New Jersey law.

To begin with, the district court did not abuse its discretion in finding ECB waived its last-antecedent canon arguments because it failed to make them in its summary judgment briefing.  In its perfunctory argument on summary judgment, ECB never asserted that the last-antecedent canon had to be applied as a matter of New Jersey law.  Instead, ECB only asserted that *Facebook* – a federal common law decision – precluded the district court's use of the series-qualifier canon.

Thus, at the summary judgment stage, ECB briefed the "for financial institutions" issue as if state law was immaterial and *Facebook* was controlling there. It was only when the district court rejected ECB's reading of *Facebook* regarding use of the series-qualifier canon that ECB pivoted and, in its Rule 59 motion for reconsideration, first raised what it now styles as "New Jersey's Rule of the Last-Antecedent."  *See* 1B 1, 29.  For the first time, ECB cited New Jersey case law purportedly mandating use of the last-antecedent canon as a matter of controlling

state law.

It is settled, however, that a motion for reconsideration cannot be used to raise matters that could have been raised before summary judgment was granted. *See, e.g., Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 961 (11th Cir. 2009) (affirming summary judgment as plaintiff "may not challenge the district court's grant of summary judgment based on arguments raised for the first time in his motion for reconsideration"); *Mays v. U.S. Postal Serv.*, 122 F.3d 43, 46 (11th Cir. 1997) (affirming summary judgment and order denying reconsideration because "a motion to reconsider should not be used by the parties to set forth new theories of law").

In particular, "[u]nder [this Court's] precedents, a party waives its opportunity to rely on non-forum law where it fails to timely provide … the *sources* of non-forum law on which it seeks to rely." *Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1208 (11th Cir. 2018) (holding plaintiff waived argument about forum law by failing to raise it in its first motion or response where relevant) (emphasis supplied); *Chavarria v. Intergro, Inc.*, 815 F. App'x 375, 378 (11th Cir. 2020) (holding plaintiff waived argument under Honduras law by failing to raise argument in her response to motion to dismiss).

For example, in *Continental Technology Services, Inc. v. Rockwell International Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991), this Court held a party waived its argument that California, rather than Georgia, law applied, where the

27

party had cited no California law.  Here, although ECB cited New Jersey authorities in arguing that a certified financial audit constitutes "Management consulting," ECB said nothing about New Jersey case law purportedly mandating application of the last-antecedent canon with respect to the "for financial institutions" issue.

This Court "cannot conclude that the district court erred by failing to apply a body of case law that [appellant] failed to present." *Carrizosa v. Chiquita Brands Int'l, Inc.*, 47 F.4th 1278, 1338 (11th Cir. 2022) (holding that even though estate may not have "necessarily waived" the personal jurisdiction argument, it did not "properly raise and preserve it either," where it merely adopted argument for other party, without citing any case law applying to the estate).

Likewise, in *United States v. Ladson*, 774 F.2d 436, 440-41 (11th Cir. 1985), this Court declined to consider an argument based on authorities first asserted on reconsideration, noting the decision now relied on as controlling had been entered a month before the issue was addressed in the district court.  The decision in *State v. Gelman*, 950 A.2d 879 (N.J. 2008), which ECB first cited in its Rule 59 motion, was issued in 2008, more than a decade before ECB briefed the summary judgment motions.

ECB claims that the *Palladino* case put Chubb "on notice of New Jersey's Rule of the Last-Antecedent."  IB 29.  But, that decision, which does not in fact state any such "Rule," was rendered decades ago.  *See N.J. Bank v. Palladino*, 389 A.2d

454, 460 (N.J. 1978), discussed *infra* at 32.  In any event, notice to the opposing party does not equate to presentation of an argument to the district court, as required to preserve the argument.  Furthermore, if Chubb was on notice of this decision, ECB was as well and should have brought it to the district court's attention in ECB's summary judgment briefing.

Had ECB done so, the district court could have considered this New Jersey case law, which ECB now characterizes as "foreign to this Circuit" and therefore warranting oral argument in this Court, before resolving the summary judgment motions.  Instead, as the district court put it, ECB sought reconsideration by arguing the court "committed legal error by failing to apply a rule of construction that no party brought before it."  (Doc. 239 at 3.)  The district court did not abuse its discretion in finding that ECB's last-antecedent canon arguments were waived.

**B.    The district court did not abuse its discretion in declining to apply the last-antecedent canon of construction rather than the series-qualifier canon.**

      **1.    The district court properly declined to apply the last-antecedent canon, once raised.**

In addition to finding ECB's last-antecedent arguments waived, the district court alternatively addressed them on their merits.  The court did not abuse its discretion in ruling that they did not warrant reconsideration.  Nor did the court err in concluding that it was not required under New Jersey law to apply the last-antecedent canon rather than the series-qualifier canon.

29

As the district court explained, under *Gelman*, a New Jersey Supreme Court decision ECB itself relied on in seeking reconsideration, the last-antecedent canon applies "unless a contrary intention otherwise appears." *Gelman*, 950 A.2d at 884. The court noted that the application for insurance could be considered in determining whether a contrary intention appeared here, citing *Cassidy v. Ohio Casualty Group*, 2011 WL 3882477, at *3 (D.N.J. Sept. 2, 2011), and *Chubb Custom Insurance Co. v. Prudential Insurance Co. of America*, 948 A.2d 1285, 1289 (N.J. 2008). (Doc 235 at 18). Here, the application seeking coverage for "Management consulting for the financial community" establishes that contrary intention.

In its opposition to ECB's Rule 59 motion, Chubb expressly relied on that caveat to the last-antecedent canon, and ECB did not dispute it in its response. Even on appeal, ECB does not address the New Jersey cases on which the district court relied in applying that caveat. Instead, ECB argues that use of the last-antecedent canon makes the definition of "Management consulting" unambiguous in ECB's favor, precluding consideration of the parties' contrary intention. ECB is wrong.

In fact, application of the last-antecedent canon results in an unnatural construction and illogical reading of the definition of "Management consulting." Under the last-antecedent canon, any services with respect to all but one of the listed areas of expertise would be covered if provided to *any* client in any business whatsoever, but services with respect to "asset recovery and strategy planning" – the

last listed area of expertise – only would be covered if they were provided to a financial institution.

It is illogical to believe coverage would be so expansive with respect to services directed to all of the listed areas of expertise and so narrow for the last area of expertise listed in the series. As the district court observed, "[i]t would be absurd to believe that [Chubb] extended coverage to [Constantin] for 'services directed toward expertise in banking finance, accounting, risk and systems analysis, [and] design and implementation' for entities in any field while limiting coverage for 'services directed toward expertise in asset recovery and strategy planning' solely to those services provided to financial institutions." (Doc. 239 at 5.)

The district court did not abuse its discretion when it made that determination in denying reconsideration of its application of the series-qualifier canon. Justice Scalia and Professor Garner's seminal treatise, frequently cited by this Court and the Supreme Court, underscores the district court's correct conclusion. In their treatise, Justice Scalia and Professor Garner state that in "the phrase 'a wall or fence that is solid,' the postpositive modifier 'that is solid' should be read as modifying both 'wall' and 'fence' to mean that both the wall as well as the fence must be solid[.]" Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Text*s § 19 at 147-51 (2012) ("Scalia & Garner"), *quoted in Beach Towing Servs. v. Sunset Land Assocs.*, 278 So. 3d 857, 861-62 (Fla. 3d DCA 2019).

Reading the phrase "a wall or fence that is solid" to mean that only that the fence need be solid because there is no comma after "fence" would be as unnatural as reading the phrase "for financial institutions" to refer only to "assert recovery and strategy planning," but not to the other fields in the same sentence "of banking finance, accounting, risk and systems analysis, [and] design and implementation." *See* (Doc. 155 ¶ 12); (Doc. 79-1 at CHUBB 005353).

Moreover, ECB is wrong when it asserts that New Jersey law imposes a bright-line, mechanical "Rule of the Last-Antecedent" in the absence of a comma. IB 13-14.  ECB relies on an overbroad reading of *State v. Gelman*, 950 A.2d 879 (N.J. 2008), where the New Jersey Supreme Court briefly discussed the last-antecedent rule of construction but made no mention that the series-qualifier canon is inapplicable in the absence of a comma.  IB 13, 17-19.

*Gelman* did not, furthermore, deal with a situation (like the one here), involving a straightforward, parallel construction that involves all nouns or verbs in a series.  The statutory provision in *Gelman* did not even contain a series.  And, of course, *Gelman* expressly recognized that courts must look at any "contrary intention" of the parties rather than, as ECB urges, automatically apply the last-antecedent canon whenever a comma is absent.

Likewise, *New Jersey Bank v. Palladino*, 389 A.2d 454, 460 (N.J. 1978), does not establish a mandatory "Rule of the Last-Antecedent."  The one sentence

32

addressing the absence of a comma does not even address a series of nouns. The district court correctly recognized that, under New Jersey law, "the last-antecedent doctrine is not the hard-and-fast rule that [ECB] makes it out to be." (Doc. 239 at 5). Nothing in New Jersey law mandates application of the last-antecedent canon if doing so would, as here, result in an unnatural construction.

As to its final ground in denying reconsideration, the district court properly rejected ECB's Rule 59 argument that the Supreme Court's decision in *Bass* establishes that the Policy definition of "Management consulting" is inherently ambiguous because of the absence of a comma, thereby a finding of coverage as a matter of New Jersey law. In fact, the *Bass* Court actually said that it did "not attach significance to an omitted comma." 404 U.S. at 340 n.6.

It is striking that ECB does not acknowledge in its Initial Brief the Reconsideration Order in which the district court undertook a detailed analysis of the reasons why it did not apply the last-antecedent canon once it was raised by ECB. ECB's silence about that order is deafening.

### 2.   The district court correctly decided to apply the series-qualifier canon under *Facebook*.

ECB's silence is equally deafening with respect to the district court's analysis of *Facebook*. As discussed above, ECB never cites or addresses *Facebook* in its Initial Brief, and thus cannot demonstrate any error in that analysis. In fact, the district court correctly applied that decision.

33

The Supreme Court explained in *Facebook* that "under conventional rules of grammar, when there is a straightforward, parallel construction that involves all nouns or verbs in a series, a modifier at the end of the list 'normally applies to the entire series.'" 141 S. Ct. at 1169 (quoting Scalia & Garner 147). Application of the series-qualifier canon "generally reflects the most natural reading of a sentence." *Facebook*, 141 S. Ct. at 1169.

Below, in response to Chubb's reliance on *Facebook* in its summary judgment briefing, ECB pointed to a snippet of that decision purportedly permitting application of the series-qualifier canon only when a comma separates the last item in the series and the post-positive modifier. But *Facebook* imposes no such mandatory requirement. Rather, the Court merely identifies the comma as an *additional* factor in favor of the series-qualifier canon because the structure of the sentence "*also* heeds the commands of its punctuation." *Id.* at 1170.

The sole issue presented to the district court by the summary judgment briefing was whether *Facebook* supported or precluded application of the series-qualifier canon. Thus, the district court only "disregarded" – that is to say, did not address – the last-antecedent canon in its Omnibus Order for the simple reason that ECB did not raise that canon in its summary judgment briefing. The court was not required to *sua sponte* address an argument ECB did not advance. *See Carrizosa*, 47 F.4th at 1338 (stating the court "generally . . . will not consider a legal issue or

theory unless it was presented to the [lower] court.").

For all the reasons discussed in Section II, the district court's judgment should be affirmed.

## III. The judgment also should be affirmed because performing a certified financial audit is not "Management consulting" covered by the Policy.

Separate from the "for financial institutions" ruling by the district court, judgment was properly entered for Chubb for a different reason: performing a certified financial audit of the company, an audit that will be relied on by third parties, does not constitute "Management consulting." Indeed, rather than consulting with management, the auditor must maintain independence from the company's management in performing such an audit.

The AICPA Statement on Standards for Consulting Services, which the district court judicially noticed, *see* (Doc. 210 at 2); (Doc. 144-1), demonstrates that performance of a certified audit attesting to third parties about a company's financial statements – the conduct alleged in the underlying lawsuit for which coverage was sought by ECB – cannot constitute "Management consulting":

> Consulting services differ fundamentally from the CPA's function of attesting to the assertions of other parties. In an attest service, the practitioner expresses a conclusion about the reliability of a written assertion that is the responsibility of another party, the asserter. In a consulting service, the practitioner develops the findings, conclusions, and recommendations presented. The nature and scope of work is determined solely by the agreement between the practitioner and the client. Generally the work is performed only for the use and benefit of the client.

(Doc. 155 ¶ 68); (Doc. 144-1 ¶ 02).

In *Fehribach v. Ernst & Young LLP*, 493 F.3d 905, 910 (7th Cir. 2007), the Seventh Circuit recognized the distinction between performing certified audits and management consulting, explaining:

> *Ernst & Young* had not contracted to provide [their client] with management-consulting services. '[A]n auditor's duty is not to give business advice; it is merely to paint an accurate picture of the audited firm's financial condition, insofar as that condition is revealed by the company's books and inventory and other sources of an auditor's opinion.'

*Id.*

ECB did not cite a single authority holding that an auditor providing formal, certified financial statements for use by third parties does not have to be independent from management and therefore can perform a certified audit as a consulting service for management. Allowing that would defeat the whole purpose of an independent certified audit like the one Constantin performed for Schratter Foods.

Notably, in the Underlying Lawsuit, ECB did not complain that Constantin failed to provide adequate "consulting services" to Schratter Foods' management. Rather, ECB claimed Constantin failed to maintain its independence from Schratter Foods' management when it performed the certified audits to be relied on by third parties such as ECB.

This case, then, is entirely unlike *Princeton Investment Partners, Ltd. v. RLI Insurance Co.*, 2018 WL 846917 (D.N.J. Feb. 9, 2018), relied on by the district court

below.  In *Princeton Investment*, the court ruled that the complaint triggered coverage under the policy's definition of "Management consulting" services because the complaint alleged "inadequate consulting and guidance" in advising and assisting the insured "with its finances, accounts and other conduct of its business." *Id.* at *6.

To be clear, a management consultant may rely on his or her accounting expertise and may perform an internal audit of company records for the purpose of making recommendations to management.  But this does not mean that all "Professional Services" involving "expertise in accounting" are "Management consulting."

On the contrary, the "Professional Services" themselves must constitute "Management consulting" as a threshold requirement for coverage.  Indeed, "the word being defined is the most significant element of the definition's context." Scalia & Garner 232; (Doc. 187 at 7-8).

As such, the determination of the scope of "Professional Services" covered by the Policy's definition of "Management consulting" cannot be made solely based on the areas of expertise listed in that definition, as the district court did, without tying them to the term actually being defined – "Management consulting."  The definition must be read as a whole, such that the services at issue must constitute "Management consulting" as a threshold requirement for coverage.

Professor Garner expanded on this point in an article discussing the "presumption against counterintuitive definitions." He favorably cited the decision in *Germain v. Town of Manchester,* 41 A.3d 1100 (Conn. App. Ct. 2012), where the "court ruled that a *hand-held scanner* must be holdable by hand despite the absence in its definition of any criterion that it must be in fact hand held. After all, *hand-held* was in the term being defined." Bryan Garner, *Can A Town Be A Museum? A Case May Hinge on the Precision of Definitions Lawyer Lexicographers Conjure for the Court,* A.B.A.J. Vol. 104, No. 7 at 26, 27 (July 2018) (emphasis in original).

Here, "Management consulting" is the term being defined. Accordingly, it not enough to say that certified audits involve accounting expertise. Unlike internal audits to assist management, certified audits to be relied on by third parties are necessarily independent from management. That is exactly the opposite of "Management consulting."

Finally, contrary to the district court's conclusion, the fact that some New Jersey statutes and regulations have included audits as part of accounting cannot avoid the fundamental requirement that for purposes of coverage as "Management consulting," the accounting services must be *consulting* services for management.

That is especially the case as Constantin could not lawfully provide consulting services to the management of Schratter Foods with respect to a certified audit of its financial statements. *See In the Matter of PricewaterhouseCoopers LLP*, 2019 WL

4596714, at *1 (S.E.C. Exchange Act Release Sept. 23, 2019) (finding accounting firm violated rules relating to auditing engagements by performing non-audit consulting services during audit engagement). Instead, as discussed above, an auditor must maintain independence from management, not consult with it.

By ignoring that the services must be consulting services to be covered under this Policy in the first instance, ECB's proposed construction leads to an unreasonable result that should be rejected under New Jersey's rules of construction. *See Hobbs v. US Coastal Ins. Co.*, 2018 WL 2332254, at *2 (D.N.J. May 23, 2018) ("[W]hen interpreting an insurance contract, the basic rule is to determine the intention of the parties from the language of the policy, giving effect to all parts so as to give a reasonable meaning to the terms.").

In all events, then, the Court should affirm the judgment for Chubb on the independent basis that the term "Management consulting" does not apply to the performance of a certified financial audit to be relied on by third parties. "The decision of the lower court must be affirmed if the result is correct even though the lower court relied upon a wrong ground or gave a wrong reason." *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1433 (11th Cir. 1998) (affirming summary judgment for reasons different from those given by the district court).

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Court should affirm the district court's judgment.

Dated:  January 9, 2023

Respectfully submitted,

/s/  *Steven J. Brodie*
Steven J. Brodie
Florida Bar No. 333069
Aaron S. Weiss
Florida Bar No. 48813
David A. Karp
Florida Bar No. 69226
Carlton Fields, P.A.
700 NW 1st Avenue, Suite 1200
Miami, Florida 33136
(305) 530-0050
sbrodie@carltonfields.com
aweiss@carltonfields.com
dkarp@carltonfields.com

Sylvia H. Walbolt
Florida Bar No. 33604
Carlton Fields, P.A.
215 South Monroe Street, Suite 500
Tallahassee, Florida 32302
(850) 224-1585
swalbolt@carltonfields.com

*Counsel for Defendants/Appellees*
*Chubb Insurance Company of New*
*Jersey and Executive Risk Indemnity Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned attorney hereby certifies that this Answer Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this response contains 8,856 words, excluding the parts exempted by Fed. R. App. P. 32(f). The undersigned attorney also certifies that this Answer Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word with Times New Roman 14-point font.

/s/ *Steven J. Brodie*
Steven J. Brodie
Florida Bar Number 333069

## CERTIFICATE OF SERVICE

I certify that on this 9th day of January, 2023, I caused the foregoing answer brief to be electronically filed with the Clerk of Court using the CM/ECF system, which will serve by e-mail all counsel of record, including Appellant's counsel, Joel S. Magolnick and John E. Kirkpatrick, Marko & Magolnick, P.A., 3001 S.W. 3rd Avenue, Miami, Florida 33219 (Magolnick@mm-pa.com, Kirkpatrick@mm-pa.com).

/s/ *Steven J. Brodie*
Steven J. Brodie
Florida Bar Number 333069

129339716.102

41