[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10811

_____

ECB USA, INC.,
a Florida Corporation,
ATLANTIC VENTURES CORP.,
a Florida Corporation,
G.I.E. C2B,
a French business entity, as assignees
of Constantin Associations LLP,
a New York limited liability partnership,
CONSTANTIN ASSOCIATES LLP,

Plaintiffs-Counter
Defendants-Appellants,

*versus*

CHUBB INSURANCE COMPANY OF
NEW JERSEY,
a New Jersey insurance company

2                    Opinion of the Court                    22-10811

corporation,
EXECUTIVE RISK INDEMNITY, INC.,
a Delaware Insurance corporation,

Defendants-Counter
Claimants-Appellees.

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cv-20569-RNS

————————————

Before JORDAN, BRASHER, and ABUDU, Circuit Judges.

BRASHER, Circuit Judge:

This case comes down to grammar and canons of construction. Chubb issued an insurance policy that covers claims against Constantin arising from "services directed toward expertise in banking finance, accounting, risk and systems analysis, design and implementation, asset recovery and strategy planning *for financial institutions*." Constantin performed an audit for a food services company; the audit went wrong and led to liability. Constantin transferred its rights under the policy to the ECB parties. The question for us is whether "for financial institutions" limits "accounting" such that there is no coverage under the policy for the audit of a food services company.

Chubb and its related parties argue that the phrase "for financial institutions" applies to everything in the list; ECB and its related parties argue that "for financial institutions" applies only to the last phrase in the series of covered services. We agree with Chubb. The series-qualifier canon of interpretation suggests that a postpositive modifier like "for financial institutions" modifies all the terms in a list of parallel items. Chubb's position is also supported by the surrounding language of the policy. Although ECB argues that the last-antecedent canon and *contra proferentem* support its position, those canons are inapposite. Because the accounting at issue was not performed for a financial institution, the claim is not covered by the professional services insurance contract that Chubb issued. Therefore, we affirm the district court's grant of summary judgment to Chubb.

## I.

Constantin is a sophisticated commercial entity that provides accounting services. In 2001, Constantin Control Associates LP acquired professional services insurance from Executive Risk Indemnity, Inc. ("ERI"), a subsidiary of Chubb Limited—the ultimate parent company. Constantin's application for insurance coverage stated that it wanted insurance for "management consulting for the financial community." Dist. Ct. Doc. 155-17 at 2. Constantin received professional liability insurance, which it renewed with ERI over the years. The last policy period with ERI ended in December 2017. In December 2017, Constantin renewed the policy

for the 2017–18 policy period with Chubb Insurance Company of New Jersey, another subsidiary of Chubb Limited.

For the relevant contract years of 2016–17 and 2017–18, Constantin's contract included Constantin Associates LLP as an insured party either by express incorporation or through definitions involving their corporate relationship. Also in both years, Constantin's "Professional Services" liability insurance covered services Constantin performed for others for a fee that were listed in a specific cross-referenced list. The relevant cross-reference in the insurance policies insured Wrongful Acts—which the contracts define—in the performance of (1) "Computer Consulting including computer system architecture and design"; (2) "Temporary Placement Agency Services"; and, critically, (3) "Management consulting services." Dist. Ct. Doc. 155-16 at 6 (2016–17 Policy); Dist. Ct. Doc. 155-37 at 23 (2017–18 Policy).

The contracts defined "[m]anagement consulting services [to] mean[] services directed toward expertise in banking finance, accounting, risk and systems analysis, design and implementation, asset recovery and strategy planning for financial institutions." Dist. Ct. Doc. 155-16 at 6; Dist. Ct. Doc. 155-37 at 23.

Constantin performed an audit for Schratter Foods Incorporated. Schratter was a food company, not a financial institution; so the parties do not dispute that Constantin's provision of accounting services was not to a "financial institution." The audit allegedly did not go well. After the audit, the ECB parties—the plaintiffs here—sued Constantin for alleged wrongdoing in the professional audit

of Schratter's financial statements in connection with the ECB parties' acquisition of Schratter. Constantin settled and assigned its rights against ERI and Chubb Insurance Company of New Jersey to the ECB parties.

In this case, the ECB parties sued to enforce Constantin's assigned contractual rights to the insurance contract, alleging a breach of contract based on a duty to defend or indemnify in the earlier, settled lawsuit. After arguing that New Jersey law applies, ECB argued in its summary judgment briefing that "for financial institutions" did not apply to "accounting" because of the absence of a comma before "for financial institutions." This was explicitly an argument about how Chubb did not win under the series-qualifier canon.

Applying New Jersey law, the district court granted the Chubb parties summary judgment in an omnibus order. The district court decided that—contrary to Chubb's argument—the auditing of financial statements was a "service[] directed toward expertise in . . . accounting." This meant that auditing could be a type of covered activity under the professional services insurance contract. But the district court decided that Chubb nonetheless won at the summary judgment stage because the accounting services must be for a financial institution to be covered by the insurance contract. The district court also granted reformation of the 2017–18 contract to ECB so that it included Constantin as a named insured, among other decisions not challenged on appeal.

The Chubb parties moved to amend the order, and the ECB parties requested reconsideration. At reconsideration, ECB raised the last-antecedent and *contra proferentem* canons for the first time, albeit without calling it the *contra proferentem* canon.

The district court granted the Chubb parties' motion to amend the order but denied the ECB parties' motion for reconsideration, stating that ECB's new canon arguments had been waived by not being made before the motion for reconsideration and that, alternatively, they did not convince the district court that reconsideration was warranted. The district court then entered an amended omnibus order on February 25, 2022, clarifying the judgment of reformation in favor of the ECB parties. Chubb does not challenge the reformation here, and the summary judgment decisions on appeal did not change in the amended omnibus order. The district court then entered its judgment.

The ECB parties appealed.

## II.

Before we can assess the merits, we must resolve two preliminary issues: our standard of review and the district court's subject matter jurisdiction. We conclude that our review is *de novo* and that the district court had diversity jurisdiction over this dispute.

### A.

We analyze *de novo* all the issues in this appeal. *See Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005) (diversity jurisdiction); *Showan v. Pressdee*, 922 F.3d 1211, 1223 (11th

Cir. 2019) (state law legal questions); *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1167 (11th Cir. 2021) (summary judgment). Chubb argues that we should apply an abuse of discretion standard on two points, but we disagree.

First, we do not defer to the district court's conclusion that ECB purportedly waived its New Jersey law arguments when we are assessing waiver for appellate purposes. Although we review for an abuse of discretion a district court's determination that a party waived an affirmative defense by not making it at the appropriate time or waived apportionment of damages by making an inconsistent argument, whether a party has waived an issue for purposes of appeal is a matter that we must assess *de novo*. *Compare Proctor v. Fluor Enters., Inc.*, 494 F.3d 1337, 1350 n.9 (11th Cir. 2007) (affirmative defense), *Smith v. R.J. Reynolds Tobacco Co.*, 880 F.3d 1272, 1280–82 (11th Cir. 2018) (apportionment of damages), and *Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1359 (11th Cir. 2018) (apportionment of damages), *with United States v. Riggs*, 967 F.2d 561, 564–65 (11th Cir. 1992) (analyzing appellate waiver ourselves when the party failed to make an argument in the district court), and *Am. Builders Ins. Co. v. Southern-Owners Ins. Co.*, 71 F.4th 847, 856 n.1 (11th Cir. 2023) (same).

Second, the district court's denial of ECB's motion for reconsideration does not change the standard of review we apply to its decision to grant summary judgment. When we review a disposition after a denial of a motion for reconsideration, we review the original disposition itself under whatever standard of review we

would normally use. *See Blackburn v. Shire US Inc.*, 18 F.4th 1310, 1317 (11th Cir. 2021) (using an abuse of discretion standard when reviewing a denial of leave to amend under Federal Rule of Civil Procedure 15(a)(2) because that is the Rule 15(a)(2) standard, without regard to the denial of the motion for reconsideration). To reverse a judgment, an appellant needs to establish an error in the judgment, not an error in the judgment *plus* an error in the district court's denial of a motion to reconsider that judgment. Here, we address the challenged summary judgment order without regard to the unchallenged denial of the motion for reconsideration. *See Gulisano v. Burlington, Inc.*, 34 F.4th 935, 941–45 (11th Cir. 2022) (affirming an initial sanctions order despite separately deeming abandoned a challenge to the subsequent denial of a motion for reconsideration of that sanctions order).

*B.*

We have appellate jurisdiction over the district court's final judgment under 28 U.S.C. § 1291. But before addressing the merits, we must first satisfy ourselves that the district court had subject matter jurisdiction. We raised this issue *sua sponte*, the parties briefed the issue, and, ultimately, the plaintiffs amended the complaint. The parties argue that the district court had diversity jurisdiction under 28 U.S.C. § 1332(a). We agree.

For diversity jurisdiction, the citizenship of all parties must be completely diverse, and the amount in controversy must exceed $75,000. *See Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010) (citing *Strawbridge v. Curtiss*, 7 U.S.

(3 Cranch) 267, 267 (1806); *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1564 (11th Cir. 1994); *Tardan v. Cal. Oil Co.*, 323 F.2d 717, 721–22 (5th Cir. 1963); 28 U.S.C. § 1332(a)). There is no meaningful question that the matter in controversy is over $75,000. But the face of the pleadings originally did not disclose the citizenship of all the parties.

A corporation is a citizen of its state or foreign country of incorporation and principal place of business. *See* 28 U.S.C. § 1332(c)(1). But we determine diversity jurisdiction for partnerships and nearly all other non-corporate entities based on the members' citizenships. *Underwriters at Lloyd's, London*, 613 F.3d at 1086 (citing *Puerto Rico v. Russell & Co.*, 288 U.S. 476, 480 (1933)); *see also Schiavone Constr. Co. v. City of New York*, 99 F.3d 546, 548 (2d Cir. 1996) (joint ventures); *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) (LLCs).

We begin with the plaintiffs. Atlantic Ventures Corp. and ECB USA, Inc. are Florida corporations with their principal places of business in Florida. G.I.E. C2B ("C2B") is a Groupement d'Interet Economique under French law, which resembles a joint venture (a type of partnership). *See Union Carbide Corp. v. Exxon Corp.*, 77 F.3d 677, 679 (2d Cir. 1996); *Phillips v. Kaplus*, 764 F.2d 807, 810 (11th Cir. 1985) ("joint venture partnership"). C2B has twenty-nine shareholders: three are Florida corporations with their principal places of business in Florida, nineteen are French corporations with their principal places of business in France, and seven are French LLCs (which are entirely made up of French citizen individuals or

French corporations with a principal place of business in France). In sum, C2B's members are citizens of France and Florida. Thus, the plaintiffs are citizens of France and Florida.[1]

Defendant Chubb Insurance Company of New Jersey is a New Jersey corporation with its principal place of business in New Jersey, so it is a citizen of New Jersey. Defendant ERI is a Delaware corporation with its principal place of business in New Jersey, so it is a citizen of Delaware and New Jersey. Thus, the defendants are citizens of New Jersey and Delaware.

Because the plaintiffs are citizens of France and Florida, and the defendants are citizens of Delaware and New Jersey, there is complete diversity. Therefore, we agree with the parties that the district court had diversity jurisdiction under 28 U.S.C. § 1332(a).

## III.

Having resolved the standard of review and jurisdiction, we now turn to the merits. Chubb insured Constantin against liability arising from "services directed toward expertise in banking finance, accounting, risk and systems analysis, design and implementation, asset recovery and strategy planning for financial institutions."

---

[1] Constantin Associates, LLP was substituted and eliminated as a party to the Fourth Amended Complaint under Federal Rule of Civil Procedure 17(a)(3). We construe the Fifth Amended Complaint—amended at our order—to contain the same party substitutions. Rule 17(a)(3) provides that "[a]fter . . . substitution, the action proceeds as if it had been originally commenced by the real party in interest." Fed. R. Civ. P. 17(a)(3). Therefore, we ignore Constantin's citizenship in our complete diversity analysis.

Constantin performed an allegedly negligent audit for a food service company—not a financial institution. Whether the policy provides coverage turns on whether the phrase "for financial institutions" modifies "accounting."

The parties agree that New Jersey law governs our interpretation of the policy, but there is nothing unusual or idiosyncratic about New Jersey law as it pertains to principles of contract interpretation. Like most state courts, the Supreme Court of New Jersey has held that "[i]n attempting to discern the meaning of a provision in an insurance contract, the plain language is ordinarily the most direct route." *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 948 A.2d 1285, 1289 (N.J. 2008) (citing *Zacarias v. Allstate Ins. Co.*, 775 A.2d 1262, 1264 (N.J. 2001)). "If the language is clear, that is the end of the inquiry. Indeed, in the absence of an ambiguity, a court should not 'engage in a strained construction to support the imposition of liability' or write a better policy for the insured than the one purchased." *Id.* (citation omitted) (quoting *Progressive Cas. Ins. Co. v. Hurley*, 765 A.2d 195, 202 (N.J. 2001)).

The New Jersey courts have also recognized that linguistic canons of construction may help a court determine the plain meaning of a text. *See, e.g.*, *Gudgeon v. Ocean Cnty.*, 342 A.2d 553, 555 (N.J. Super. Ct. App. Div. 1975) (describing grammar analysis using the syntactic canons as merely "consideration of principles of grammatical construction"). The Supreme Court of New Jersey has long applied the last-antecedent canon as it is commonly understood. *See State v. Gelman*, 950 A.2d 879, 884 (N.J. 2008) ("[T]he doctrine

of the last antecedent . . . holds that, unless a contrary intention otherwise appears, a qualifying phrase within a statute refers to the last antecedent phrase." (citing 2A Norman J. Singer & Shambie Singer, *Sutherland Statutes and Statutory Construction* § 47.33 (7th ed. 2007))). And, although the Supreme Court of New Jersey has not itself discussed the series-qualifier canon, other New Jersey appellate courts have relied on that canon. *See In re Proposed Constr. of Compressor Station (CS327)*, 302 A.3d 82, 89 n.10 (N.J. Super. Ct. App. Div. 2023) (quoting Antonin Scalia & Brian A. Garner, *Reading Law: The Interpretation of Legal Texts* 147–48 (2012)); *see also id.* at 89–90.

Finally, New Jersey courts recognize *contra proferentem*. This substantive canon provides that courts should read an ambiguous contract to have the meaning that favors the non-drafting party, which is generally the insured party with an insurance contract. *See Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co.*, 160 A.3d 1263, 1270 (N.J. 2017) ("Ordinarily, our courts construe insurance contract ambiguities in favor of the insured via the doctrine of *contra proferentem*." (citing *Progressive Cas. Ins. Co.*, 765 A.2d at 201–02)). Effectively, *contra proferentem* gives weight to one party's interpretation if there is a true ambiguity.

Chubb argues that ECB cannot rely on the last-antecedent or *contra proferentem* canons on appeal because it first raised these canons in its motion for reconsideration under Federal Rule of Civil Procedure 59—which the district court denied in part because the canons had not previously been raised—and because ECB did not

challenge the district court's denial of its motion for reconsideration on appeal. We disagree. As we have already explained, we are reviewing the district court's earlier summary judgment decision, not its decision on ECB's motion for reconsideration. In denying ECB's motion for reconsideration, the district court properly noted that a Rule 59 motion is usually not a proper vehicle to raise new arguments that could have been raised prior to the entry of judgment. *See Michael Linet, Inc. v. Village of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005). But the district court's ruling on ECB's Rule 59 motion does not control what arguments ECB may make on appeal.

For purposes of appeal, ECB may raise the canons to support its construction of the policy. Litigants can waive or forfeit positions or issues through their litigation conduct in the district court but not authorities or arguments. *See Nelson v. Adams USA, Inc.*, 529 U.S. 460, 469–70 (2000); *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992); *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1194 (11th Cir. 2018); *Black v. Wigington*, 811 F.3d 1259, 1268 (11th Cir. 2016). So a party cannot usually argue that a legal text should be read to mean something different on appeal than what it argued for below (a new position) or raise a new legal ground as the reason it should win (a new issue). But a party on appeal can always cite a new authority—such as the canons of construction—in favor of reading a legal text to mean what the party advocated for below. Here, of course, ECB has consistently argued that the policy language covers "accounting" consulting for businesses in any industry, notwithstanding the phrase "for financial institutions." The

canons merely provide additional authority to support that position.

Although our caselaw has sometimes muddied the line between an issue (which can be waived or forfeited) and an argument (which cannot be), we are nowhere close to the line here. A party may always rely on a canon of construction to support the same interpretation of a legal document that the party advanced in the district court. A party can no more waive or forfeit the canons for appellate purposes than it can waive or forfeit the existence of a precedent or the words of a statute. *See United States v. Dawson*, 64 F.4th 1227, 1239 (11th Cir. 2023) ("Indeed, a party cannot waive lenity any more than it can waive the plain meaning of a word or the canon of *noscitur a sociis*."). So even if ECB missed its chance to cite these canons to the district court, ECB did not waive or forfeit anything for purposes of appeal.

Against this backdrop, ECB argues that the policy covers all accounting services, and Chubb argues that the policy covers only accounting services for financial institutions. Chubb contends that its position is supported by the series-qualifier canon and the surrounding language in the agreement. ECB says that its position is supported by the last-antecedent canon. To the extent the language is ambiguous, ECB says that the principle of *contra proferentem* means we must resolve any ambiguities in its favor. We think Chubb has the better argument in all respects.

### A.

We'll start with the plain language of the agreement. The object in contract interpretation is to identify the intent of the parties, and the best evidence of the intent is the language of the agreement itself. "The canons of construction often 'play a prominent role' in [interpreting a text] . . . , serving as 'useful tools' to discern th[e] ordinary meaning." *Heyman v. Cooper*, 31 F.4th 1315, 1319 (11th Cir. 2022) (quoting *Facebook, Inc. v. Duguid*, 592 U.S. 395, 410 (2021) (Alito, J., concurring in the judgment)). The parties here rely extensively—almost exclusively—on canons of interpretation as evidence of plain meaning. So that is where we will turn.

### 1.

When a "provision includes a list of nouns followed by a modifier," the parties usually invoke two canons: the last-antecedent canon and the series-qualifier canon. *Id.* And that is what Chubb and ECB have done here.

The rule of the last antecedent in its purest form provides that "[a] pronoun, relative pronoun, or demonstrative adjective generally refers to the nearest reasonable antecedent." Scalia & Garner, *supra*, at 144. In grammar, an "antecedent" is "a substantive word, phrase, or clause whose denotation is referred to by a pronoun that typically follows the substantive [word] (such as John in 'Mary saw John and called to him')." *Antecedent*, Merriam-Webster, https://perma.cc/4896-M68J. "The last antecedent is the last word, phrase, or clause that can be made an antecedent without

impairing the meaning of the sentence." *Kamienski v. State, Dep't of Treasury*, 169 A.3d 493, 505 n.11 (N.J. Super. Ct. App. Div. 2017) (internal quotation marks omitted) (quoting 2A Norman J. Singer & Shambie Singer, *Sutherland Statutes and Statutory Construction* § 47.33 (7th ed., rev. 2014)). Unsurprisingly, ECB urges us to follow that canon here, treating "asset recovery and strategy planning" as the last antecedent—in a loose sense—of "for financial institutions."

The series-qualifier canon, on the other hand, provides that, "[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series." Scalia & Garner, *supra*, at 147. It reflects the unremarkable convention that "[w]hen several words are followed by a clause [that] [] is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." *Paroline v. United States*, 572 U.S. 434, 447 (2014) (quoting *Porto Rico Ry., Light & Power Co. v. Mor*, 253 U.S. 345, 348 (1920)). Unsurprisingly, Chubb urges us to apply the series-qualifier canon—treating "for financial institutions" as an adjective phrase that applies to each preceding noun in the series, including "accounting."

These two canons are sometimes referred to as "competing" because they can both apply to words and phrases that come at the end of a sentence. *See Heyman*, 31 F.4th at 1319. But they are more accurately viewed as solving for different problems.

The series-qualifier canon helps us understand the meaning of items in a list with a parallel construction that are modified by an adjective, adverb, or qualifying phrase. The paradigmatic case for the series-qualifier canon is "[a] state statute allow[ing] medical professionals access to certain hospital records if they [are] 'requesting or seeking through discovery data, information, or records relating to their medical staff privileges." Scalia & Garner, *supra*, at 149 (citing *Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379 (Minn. 1999)). There are two ways to read "through discovery" in this statute. It either modifies both requesting and seeking or only seeking. The leading treatise on the canons—Scalia and Garner—explains that the Minnesota Supreme Court correctly determined that "through discovery" modifies both terms. *See id.* at 150 (citing *Amaral*, 598 N.W.2d at 388).

The last-antecedent canon, on the other hand, is generally used to help us understand to what a pronoun, relative pronoun, or demonstrative adjective is referring. These are all words or phrases that act as shorthand or substitutes for something else—such as "she," "that kind of activity," or "such person." *See Pronoun*, Merriam-Webster, https://perma.cc/AW4D-5692; Scalia & Garner, *supra*, at 145 (relative pronouns); *Demonstrative Adjectives*, The Mayfield Handbook of Technical & Scientific Writing, https://perma.cc/TR99-XBHH. The paradigmatic example of this canon is in Article II of the U.S. Constitution. It states that "In Case of the Removal of the President from Office, or of his Death, Resignation or Inability to discharge the Powers and Duties of the said Office, the Same shall devolve on the Vice President." U.S. Const.

art. II, § 1, cl. 6, *amended by* U.S. Const. amend. XXV. What is "the Same" that devolves onto the Vice President: "the Powers and Duties" of the President or the "Office" of President? The last-antecedent canon resolves this issue in favor of *office* being the nearest reasonable antecedent of *same*. *See* Scalia and Garner, *supra*, at 144.

To be clear, courts have gone further and applied the last-antecedent canon to other parts of speech when the text and context reinforce that reading. That is, some have recognized that, in addition to pronouns and the like, "[r]eferential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent." 2A Norman J. Singer & Shambie Singer, *Sutherland Statutes and Statutory Construction* § 47.33 (7th ed. 2007) (collecting cases); *see also, e.g., Lockhart v. United States*, 577 U.S. 347, 350–52 (2016); *Morella v. Grand Union/N.J. Self-Insurers Guar. Ass'n*, 917 A.2d 826, 831 (N.J. Super. Ct. App. Div. 2007), *aff'd sub nom. Morella v. Grand Union Co./N.J. Self-Insurers Guar. Ass'n*, 939 A.2d 226 (N.J. 2008). When applying this canon beyond pronouns and related words, "it is more accurate . . . to call it the nearest-reasonable-referent canon" because, "[s]trictly speaking, only pronouns have antecedents." Scalia & Ganer, *supra*, at 152 (emphasis omitted); *see also Ray v. McCullough Payne & Haan, LLC*, 838 F.3d 1107, 1111 (11th Cir. 2016). But the result is the same: this principle suggests that "adjectives, adverbs, and adverbial or adjectival phrases" normally modify the closest reasonable noun or verb, "and it applies not just to words that precede the modifier, but also to words that follow it." Scalia & Garner, *supra*, at 152. But that presumption does not apply when the nouns or verbs are in a

parallel series. *See id.* ("When the syntax involves something *other than a parallel series of nouns or verbs*, a prepositive or postpositive modifier normally applies only to the nearest reasonable referent." (emphasis added)).

Of course, all these canons—including the last-antecedent and nearest-reasonable-referent canons—can be defeated by other indicia of meaning because they are just one tool of textual analysis. *See Lockhart*, 577 U.S. at 352 ("Of course, as with any canon of statutory interpretation, the rule of the last antecedent 'is not an absolute and can assuredly be overcome by other indicia of meaning.'" (quoting *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003))); *Gelman*, 950 A.2d at 884 ("*[U]nless a contrary intention otherwise appears*, a qualifying phrase within a statute refers to the last antecedent phrase." (emphasis added)). Indeed, we have explained that "the canons are not rules of interpretation in any strict sense." *Heyman*, 31 F.4th at 1319 (internal quotation marks omitted) (quoting Scalia & Garner, *supra*, at 51). They are just rules of thumb that reflect common grammatical presumptions. *See id.*

### 2.

Having explained the applicable canons, we turn to the meat of the parties' dispute: Does "for financial institutions" modify "accounting" in the phrase "services directed toward expertise in banking finance, accounting, risk and systems analysis, design and implementation, asset recovery and strategy planning for financial institutions"? ECB argues that we should apply the last-antecedent canon (or, more accurately, the nearest-reasonable-referent canon)

and hold that "for financial institutions" modifies only "asset recovery and strategy planning." Chubb argues that we should apply the series-qualifier canon and construe "for financial institutions" to modify all the items in the list, including "accounting."

We believe that, as between the parties' two ways of understanding the text, the better reading is provided by the series-qualifier canon. The key to understanding any text—and to intelligently applying the canons—is "logic, linguistics, and common sense." *Id.* at 1322. Considering this phrase in context, the best reading of the policy language is that it covers "services directed toward expertise in . . . accounting . . . for financial institutions."

We believe this understanding is better for three reasons.

First, the relevant phrase here involves none of the parts of speech to which the last-antecedent canon is most clearly useful. The phrase "for financial institutions" isn't standing in for another phrase. It's not a pronoun like "she" or "it," a relative pronoun like "that" in certain sentences, or a demonstrative adjective like "such" or "these." The canons are useful because they reflect "presumptions about what an intelligently produced text conveys." *Id.* at 1319 (quoting Scalia & Garner, *supra*, at 51). But we are outside the heartland of the last-antecedent canon's most fundamental presumption—that a pronoun or other stand-in refers back to the closest noun.

Of course, the last-antecedent principle goes beyond pronouns, but even this more robust version of the principle as reflected in the nearest-reasonable-referent canon doesn't do much

work here. The closest referent to "for financial institutions" in the contract is "strategy planning"—"banking finance, accounting, risk and systems analysis, design and implementation, asset recovery and *strategy planning for financial institutions*." But ECB concedes that, at the very least, the phrase "for financial institutions" applies to "asset recovery" too. That is, ECB concedes that the phrase applies to more than the nearest reasonable referent.

ECB's concession is well taken. By conceding that "for financial institutions" cannot apply to only "strategy planning," ECB recognizes that "asset recovery and strategy planning" are parallel terms. And no version of the last-antecedent canon or nearest-reasonable-referent canon applies when the syntax involves "a parallel series of nouns or verbs." Scalia & Garner, *supra*, at 152. In light of its concession, ECB is not really arguing that the last-antecedent canon or nearest-reasonable-referent canon solves the interpretive problem here. Instead, it is arguing that we should apply a limited version of the series-qualifier canon—viewing "asset recovery and strategy planning" as a series that is separate from the rest of the nouns in the phrase.

Second, as indicated by ECB's concession, we are within the heartland of the series-qualifier canon. To start, the parts of speech to which the series-qualifier canon applies are present here. "When there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series." *Id.* at 147. Here, we have a parallel construction in a series that is followed by a postpositive

qualifier—"for financial institutions." The contract has a list of nouns separated only by commas, with no additional words like prepositions, articles, or conjunctions within the middle of the list; so these terms are in parallel. The parallel nature of the terms links them together so that the postpositive modifier "for financial institutions" can naturally apply to every item in the list, not just the last one or two.

We note that the New Jersey courts have applied the series-qualifier canon when faced with a similar grammatical construction of a parallel list of nouns and a modifying word. *See In re Proposed Constr. of Compressor Station (CS327)*, 302 A.3d at 89 n.10 (quoting Scalia & Garner, *supra*, at 147–48). In that case, the New Jersey court interpreted a statute that said "routine maintenance and operations, rehabilitation, preservation, reconstruction, repair, or upgrade of public utility lines . . . ." *See id.* at 88 (quoting N.J. Stat. Ann. § 13:20-28(a)(11)). The question was whether "routine" modified only "maintenance and operations" or other items in the list. *See id.* The New Jersey court applied the prepositive modifier "routine" to all terms in the list. *See id.* at 89. Here, we have a postpositive modifier, which has the same grammatical function but comes after instead of before the terms it modifies. It follows that the same principle should apply.

For its part, ECB argues that "asset recovery and strategy planning" should be treated differently than the other items in the list because there is no comma between "asset recovery" and "and

strategy planning" or between "strategy planning" and "for finan-
cial institutions." We aren't convinced.

Certainly, the presence of a comma before "for financial in-
stitutions" would establish with more certainty that it applies
across every term in the list. *See, e.g.*, *Facebook, Inc.*, 592 U.S. at 403–
04 (recognizing that the presence of a comma suggests a phrase ap-
plies across all terms); *Gudgeon*, 342 A.2d at 555–56 ("Where a
comma is used to set a modifying phrase off from previous phrases,
the modifying phrase applies to all the previous phrases, not just
the immediately preceding phrase."); *Morella*, 917 A.2d at 831
("[T]he use of a 'comma' to separate a modifier from an antecedent
phrase indicates an intent to apply the modifier to all previous an-
tecedent phrases." (citations omitted)). But the absence of the
comma doesn't necessarily mean that "for financial institutions"
fails to apply to every term. Although "commas at the end of series
can avoid ambiguity, . . . [the] use of such commas is discretion-
ary." *United States v. Bass*, 404 U.S. 336, 340 n.6 (1971) (citing Bergen
Evans & Cornelia Evans, *A Dictionary of Contemporary American Us-
age* 103 (1957); Margaret Nicholson, *A Dictionary of American-English
Usage* 94 (1957); Roy H. Copperud, *A Dictionary of Usage and Style*
94–95 (1964); William Strunk & E.B. White, *The Elements of Style* 1–
2 (1959)).

Likewise, we can't discern any meaning in the absence of a
comma between "asset recovery" and "and strategy planning."
The comma before "asset recovery" is simply a serial comma, like
all the other commas in the phrase. The last serial comma that

should go between "asset recovery" and "and strategy planning"—
a so-called Oxford comma—is often dropped at the end of a list.
There isn't any ambiguity about whether the "and" before "strat-
egy planning" indicates that "strategy planning" closes the list—it
does. So there's no reason to believe that New Jersey courts would
import meaning into the absence of an Oxford comma in this sen-
tence. *See Perez v. Zagami, LLC*, 94 A.3d 869, 874 (N.J. 2014) ("Alt-
hough not to be entirely ignored, punctuation cannot be allowed
to control the meaning of the words chosen to voice the intention."
(quoting *Casriel v. King*, 65 A.2d 514, 516 (N.J. 1949))); *In re Proposed
Constr. of Compressor Station (CS327)*, 302 A.3d at 89.

Third, in addition to these canons, Chubb's reading is more
consistent with the surrounding language. Recall that the insur-
ance policy covers liability arising out of "[m]anagement consult-
ing services." Then, the contract defines "[m]anagement consult-
ing services [to] mean[] services directed toward expertise in bank-
ing finance, accounting, risk and systems analysis, design and im-
plementation, asset recovery and strategy planning for financial in-
stitutions."

ECB's reading does violence to the overall text in two key
respects. To begin, if "for financial institutions" doesn't apply to
"accounting," then it doesn't really limit anything at all. All con-
sulting about asset recovery or strategy planning would presuma-
bly reflect at least some "expertise in . . . accounting." Because any
consulting service that would be provided to a business could re-
flect expertise in "accounting," ECB's reading would defeat the

purpose of having a "financial institutions" limitation on any of the terms. Moreover, if "for financial institutions" didn't apply to the whole list, certain consulting services like "banking finance," "asset recovery . . . for financial institutions," and "strategy planning for financial institutions" would be bounded by a relationship to finance and banks—but other services like "accounting" would be completely unrelated to the industry of the firm's client. Conversely, applying "for financial institutions" to all the terms gives meaning to the "for financial institutions" limitation and makes sense when the phrases are viewed together as a group.

\* \* \*

Chubb's view is far more likely to reflect the meeting of the minds. Because applying "for financial institutions" across all terms is consistent with the general rule of the series-qualifier canon—which grammatically applies best here—and makes far more sense in context, that is the plain meaning of the contract's language. "The two possible readings thus reduce to one . . . ." *Pulsifer v. United States*, 144 S. Ct. 718, 737 (2024).

### B.

In response to this reasoning, ECB argues that this contract is ambiguous and that it should, therefore, win under the *contra proferentem* canon. The *contra proferentem* canon provides that courts should read an ambiguous contract to have the meaning that favors the non-drafting party. *See Oxford Realty Grp. Cedar*, 160 A.3d at 1270. When an insurance company drafts an insurance

contract, the *contra proferentem* canon requires resolving ambiguities in an insurance contract in favor of the insured. *See id.*

Although the *contra proferentem* canon is a well-established part of New Jersey law, it doesn't help ECB for two reasons.

First, this contract is not genuinely ambiguous. *See Pacifico v. Pacifico*, 920 A.2d 73, 78 (N.J. 2007). Under New Jersey law, "only genuine interpretational difficulties will implicate the doctrine that requires ambiguities to be construed favorably to the insured." *Progressive Cas. Ins. Co.*, 765 A.2d at 202 (citing *Am. White Cross Lab'ys, Inc. v. Cont'l Ins. Co.*, 495 A.2d 152, 157 (N.J. Super. Ct. App. Div. 1985)). "A 'genuine ambiguity' arises only 'where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage.'" *Id.* (quoting *Weedo v. Stone-E-Brick, Inc.*, 405 A.2d 788, 795 (N.J. 1979)). Some difficulty in determining the answer to a legal question does not equate to ambiguity. *See Kisor v. Wilkie*, 588 U.S. 558, 574–75 (2019).

ECB argues, and it is true, that some New Jersey precedents say that "[i]f the terms of the contract are susceptible to at least two reasonable alternative interpretations, an ambiguity exists." *Chubb Custom Ins. Co.*, 948 A.2d at 1289 (citing *Nester v. O'Donnell*, 693 A.2d 1214, 1220 (N.J. Super. Ct. App. Div. 1997)). But there are not two *reasonable* alternative interpretations of this contract language. As the Supreme Court of New Jersey has recognized, "[a]n insurance policy is not ambiguous merely because two conflicting interpretations of it are suggested by the litigants." *Oxford Realty Grp. Cedar*, 160 A.3d at 1270 (internal quotation marks omitted)

(quoting *Fed. Ins. Co. v. Campbell Soup Co.*, 885 A.2d 465, 468 (N.J. Super. Ct. App. Div. 2005)). Instead, as we've explained, one reading of this contract is superior to the other.

In short, we do not jump straight to *contra proferentem* if we can determine the contract's meaning without it. A court may apply that canon only "after a court has examined the terms of the contract, in light of the common usage and custom, and considered the circumstances surrounding its execution." *Pacifico*, 920 A.2d at 78. Only "[i]f, at that time, the court is unable to determine the meaning of the term, [may] *contra proferentem* [] be employed as a doctrine of last resort." *Id.* (emphasis added). Because we can readily interpret this contract in light of its text, there is no genuine interpretational difficulty, and we need not and cannot turn to *contra proferentem*.

Second, even if there were a genuine interpretational dispute such that the *contra proferentem* canon could apply to this contractual text, it would not apply to an insurance contract between these sophisticated commercial entities. The Supreme Court of New Jersey has held that "the rules tending to favor an insured that has entered into a contract of adhesion are inapplicable where, as here, both parties are sophisticated commercial entities with equal bargaining power." *Chubb Custom Ins. Co.*, 948 A.2d at 1294 (citing *Pacifico*, 920 A.2d at 78–79) (stating that New Jersey case law "requir[es] unequal bargaining power for application of *contra proferentem*" (citing *Pacifico*, 920 A.2d at 78–79)); *see also Oxford Realty Grp. Cedar*, 160 A.3d at 1270 ("Sophisticated commercial

insureds, however, do not receive the benefit of having contractual ambiguities construed against the insurer." (citing *Chubb Custom Ins. Co.*, 948 A.2d at 1294; *Werner Indus., Inc. v. First State Ins. Co.*, 548 A.2d 188, 192 (N.J. 1988))).

We have no doubt that Constantin—the accounting firm insured under this contract—is a sophisticated commercial entity that had many different options to purchase liability insurance. It may be, as ECB argues, that the former New Jersey branch of Constantin was a relatively small office with few employees, but size does not necessarily equate to a lack of commercial sophistication. Even that smaller office was composed of accounting professionals, and those professionals specifically asked for an insurance policy that would cover risks arising from "management consulting for the financial community." Because Constantin was offering its services and expertise to help its clients manage risk, it stands to reason that it was sophisticated enough to manage its own.

## IV.

We **AFFIRM** the district court's grant of summary judgment.